IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **RETAIL SERVICE SYSTEMS, INC.** | : | **Case No. 2:26-cv-00383** |
| | : | |
| **Plaintiff,** | : | |
| | : | **JUDGE ALGENON L. MARBLEY** |
| **v.** | : | |
| | : | **MAGISTRATE JUDGE VASCURA** |
| **AMERICA BEDDING DIRECT, LLC,** *et al.*, | : | |
| | : | |
| **Defendant.** | : | |

**OPINION & ORDER**

This matter came before this Court on Plaintiff's Verified Complaint for Injunctive Relief and Damages (ECF No. 1 ), Motion for Temporary Restraining Order and Preliminary Injunction (ECF No. 4), and Memorandum of Law and Brief in Support of Motion for Temporary Restraining Order and Preliminary Injunction (ECF No. 5). This Court held a conference on Plaintiff's Motion for a TRO pursuant to S.D. Ohio Civ. R. 65.1 on Tuesday, April 1, 2026. This Opinion and Order only addresses Plaintiff's Motion for a TRO. For the reasons below, this Court **GRANTS** Plaintiff's Motion for a TRO (ECF No. 4).

## I.    BACKGROUND

### A.  Factual Background

Retail Service Systems ("RSS") is a franchiser of franchises in the home furnishing industry, particularly the mattress industry. (ECF No. 1 at 2). In 2013, RSS acquired  two corporations, Power Marketing Direct, Inc. and PMD Furniture Direct, Inc. (collectively, "PMD"). (*Id.* at 9). In the acquisition of PMD, RSS acquired "a unique and comprehensive recruiting, training, and marketing program" PMD had  developed and applied to the brick-and-mortar mattress and furniture industry. (*Id.*). RSS has since developed the PMD recruiting and marketing program and relies on it as an integral part of their business model to date. (*Id.* at 10). RSS trains

all dealers on the program through an intensive management and training program. (*Id.* at 12). The program focuses on business techniques, provides one on one coaching, and consists of weekly training calls. (*Id.*). RSS requires all prospective licensees or franchisees to first agree to specific terms regarding confidentiality, non-competition, and non-solicitation, before allowing access to the program. (*Id.* at 13).[1]

Defendant Darren Conrad is the former Chief Community Officer for RSS. (ECF No. 1 at 2). He assumed this role in December 2016. (*Id.* at 16). In 2017, Conrad became an RSS shareholder and board member. (*Id.* at 17). As an employee with access to the RSS recruiting and marketing program, other confidential RSS information, and trade secrets, Conrad signed both the Retail Service Systems, Inc. Principals Non-Compete and Non-Solicitation Agreement, and the RSS Non-Disclosure Agreement. (*Id.* at 3). Each year of his employment, Conrad re-affirmed his understanding of the RSS Non-Disclosure Agreement by signing the Agreement at each annual training conference. (*Id.* at 18). Conrad most recently signed the Agreement on October 7, 2024. (*Id.*).

The Non-Disclosure Agreement provided Conrad would "not, directly or indirectly, disclose any Confidential Information to a third party, including any individual, corporation, company, partnership, organization, association or other entity or person, or to any person other than those involved in a business relationship with RSS and who are similarly bound by confidentiality." (*Id.* at 18). Additionally, the Principals Agreement provided that Conrad "would not engage, own, manage, control, operate, be employed by, participate in, or be connected with the ownership, management, operation, or control of a business similar to the type of business conducted by RSS for a period of one year following the end of his employment with RSS." (*Id.*

---

[1] PMD's unique training and marketing program has already been deemed a trade secret under Ohio law. *See Power Mktg. Direct, Inc. v. Darren Conrad*, Case No. 04-CV-001519 (Franklin C.P.).

at 17).

On June 30, 2025, Conrad resigned from his employment with RSS and from the Board. (*Id.* at 19). On January 12, 2026, Conrad incorporated his company, and Defendant in this lawsuit, America Bedding Direct ("ABD"). (*Id.*). Since Conrad's resignation, two other former RSS employees and parties to this lawsuit, Troy Meath, and Brad Loy, also resigned from their roles at RSS. (*Id.* at 3, 19). Until October 2025, Meath was a dealer as the sole proprietor of Lodi Mattress Direct in Lodi, California. (*Id.* at 3). Meath also previously served as a Market Development Director for RSS. (*Id.*). RSS alleges that as of November 2025, Lodi has been directly competing with RSS by using RSS confidential information, despite no longer being authorized to do so. (*Id.*).

Brad Loy also worked at RSS until his resignation on February 14, 2026. (*Id.* at 4). Loy worked as a recruiting specialist at the time of his resignation but previously held a higher-level position as Chief Coaching Officer, a role that focused on training coaches for the RSS network nationwide. (*Id.* at 4). On February 17, 2026, Loy filed paperwork to register his new limited liability company, Mattress Clearance Center. (*Id.* at 5). Both Meath and Loy signed the Independent Contractor Unilateral Confidentiality, Non-Disclosure, and Non-Compete Agreement and the RSS Confidentiality and Non-Disclosure Agreement. (*Id.* at 3–4). Meath last signed this Non-Disclosure Agreement on January 17, 2022, and Loy last signed on September 22, 2025. (*Id.* at 18).

On March 18, RSS discovered the website, www.americabeddingdirect.com, on which ABD has allegedly displayed RSS trade secrets. (*Id.* at 5). RSS contends the website is being used in conjunction with Conrad, Meath, and Loy to market and sell business opportunities and business coaching services in the retail furniture and mattress industry using RSS confidential information and trade secrets. (*Id.*). The website contains the description and images of tracking and measuring

3

processes used in the operation of RSS locations, and directions for setting up a mattress retailer store. (ECF No. 5 at 15). The Complaint further specifies the Defendants "are working together in a concerted effort to use RSS's Confidential Information and trade secrets to recruit and train others to unfairly compete with RSS and its current licensees and franchisees." (ECF No. 1 at 5). RSS further alleges it discovered two books authored by Conrad, "Mattress Money" and "A Million Ways to Make A Million Dollars" which contain RSS trade secrets. (*Id.* at 20).

### B.  Procedural Background

On March 29, 2026, RSS filed a complaint alleging: (1) Violation of the Defend Trade Secrets Act of 2016; (2) Misappropriation of Trade Secrets Ohio Uniform Trade Secrets Act – Ohio Rev. Code §§ 1333.61, et seq.; (3) Breach of Principals Agreement Against Conrad; (4) Breach of Confidentiality and Non-Compete Agreements Against Meath and Loy; and (5) Breach of Non-Disclosure Agreements Against Conrad Meath and Loy. (ECF No. 1). On March 30, 2026, RSS moved for a Temporary Restraining Order and Preliminary Injunction against the Defendants. (ECF No. 5). The TRO requests an Order preventing the Defendants from "disseminating, distributing and benefiting from their misappropriation of RSS Confidential Information and Trade Secrets." (*Id.* at 1). Additionally, RSS seeks to enforce the Principals Non-Compete and Non-Solicitation Agreement against Conrad and prohibit him from "engaging, owning, managing, controlling, operating, being employed by, participating in, or being connected with the ownership, management, operation, or control of a business similar to the type of business conducted by RSS. (*Id.*).

### II.     STANDARD OF REVIEW

A TRO is an emergency measure. *See McGirr v. Rehme*, 2017 WL 1426456, at *1, *2 (S.D. Ohio Apr. 21, 2017). Federal Rule of Civil Procedure 65(b) requires a Court to examine, on

application for a TRO, whether "specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant." Fed. R. Civ. P. 65(b)(1)(A). A TRO is meant "to prevent immediate and irreparable harm to the complaining party during the period necessary to conduct a hearing on a preliminary injunction." *Dow Chem. Co. v. Blum*, 469 F. Supp. 892, 901 (E.D. Mich. 1979).

While a Court is permitted to consider other factors, immediacy, and irreparability of harm are threshold considerations since a TRO is an extraordinary remedy whose purpose is to preserve the status quo. *Marshall v. Ohio Univ.*, 2015 WL 1179955, at *4 (S.D. Ohio Mar. 13, 2015) (citing *Proctor & Gamble Co. v. Bankers Tr. Co.*, 78 F.3d 219, 226 (6th Cir.1996)). Therefore, to obtain temporary injunctive relief, it is of paramount importance that the Plaintiff establish immediacy and irreparability of injury. See *Doe v. Univ. of Cincinnati*, 2015 WL 5729328, at *1 (S.D. Ohio Sept. 30, 2015) (noting that the "standard for issuing a temporary restraining order is logically the same as for a preliminary injunction with emphasis, however, on irreparable harm given that the purpose of a temporary restraining order is to maintain the status quo") (citing *Motor Vehicle Bd. of Cal. v. Fox*, 434 U.S. 1345, 1347 n.2 (1977)).

### III.     LAW AND ANALYSIS

#### A.  Immediacy of Harm

This Court must first consider the immediacy of harm RSS faces. Fed. R. Civ. P. 65(b)(1)(A). Here, RSS is the owner of the RSS program which has incorporated and improved upon the PMD marketing and training system. (ECF No. 5 at 5). On March 18, 2026, RSS discovered the America Bedding Direct website, on which RSS alleges Defendants are actively disclosing confidential information and trade secrets that cannot be unseen. (*Id.* at 2, 19). Additionally, RSS alleges Defendant Conrad recently published two books that display RRS

confidential information and trade secrets, "Mattress Money" and "A million Ways to Make a Million Dollars." (*Id.* at 2). These books are actively available for purchase on Amazon. (*Id.* at 10). All Defendants involved signed non-disclosure agreements prohibiting the disclosure of any confidential RSS information to a third party. (ECF No. 1-1, Exhibit B, at 1; Exhibit C, at 1). Based on these agreements and RSS's ownership over the marketing and training program, RSS will suffer immediate harm without a TRO preventing Defendants' continued disclosure of RSS's confidential information and trade secrets. RSS has demonstrated the immediacy of harm.

**B.  Irreparability of Harm**

This Court must next consider the irreparability of harm RSS faces. Fed. R. Civ. P. 65(b)(1)(A). Generally, harm is not irreparable if it is fully compensable by money damages. *Basicomputer Corp. v. Scott*, 973 F.2d 507, 511 (6th Cir. 1992). Damages to a plaintiff's goodwill and reputation, however, are difficult to quantify and amount to irreparable harm. *See, e.g.*, *Bluemile, Inc. v. YourColo*, LLC, 2011 WL 13233391, at *6 (S.D. Ohio July 8, 2011*); Eat BBQ LLC, et al. v. Walters*, 2012 WL 5835679, at *5 (E.D. Ky. Nov. 16, 2012).

Here, ABD continues to display RSS's confidential information and trade secrets on its website, and in the books authored by Conrad. On the whole, RSS has invested substantial time and economic resources in development of its marketing and training program that has made it successful in launching franchisees nationwide. At the 65.1 conference, RSS contended Defendants' actions are eroding the RSS brand and hurting its relationships with franchisees in a niche market. The law recognizes the misappropriation of trade secrets as an irreparable loss for which monetary damages would not suffice to make a party complete. *ApplianceSmart, Inc. v. DeMatteo*, 2018 WL 6727094, *2 (S.D. Ohio Dec. 21, 2018) ( citing *Basicomputer Corp.*, 973 F.2d at 513.). If Defendants continue the disclosure of RSS's business model online it will gain

6

traction thereby impacting RSS's current franchisees and relationships within the industry. As such, RSS has demonstrated irreparability of harm.

## IV.    CONCLUSION

For the reasons set forth above, this Court **GRANTS** Plaintiff's Motion for a TRO against Defendants (ECF No. 4). Specifically, Defendants are enjoined from the following:

A.    Defendants and all of their agents, representatives, and employees are each hereby temporarily enjoined, restrained and prohibited, directly or indirectly, from:

1.    Disclosing, using, transmitting, and/or otherwise making publicly available for any purpose any Confidential Information and Trade Secrets, as described in RSS's Verified Complaint, including RSS's proprietary compilation of processes, methodologies, and techniques related to RSS's dealer recruitment process, marketing system, operational methodologies, operating systems, customer and supplier lists, pricing strategies, and RSS's system for establishing and operating a brick-and-mortar retail home furnishings business, and all documents and information derived therefrom (the "Materials"), whether in original, copied, computerized, handwritten, physical, intangible, or any other form;

2.    Destroying, erasing or otherwise making unavailable for further proceedings in this matter, the Materials, any related metadata, or any other evidence concerning any of the events alleged in the Complaint in this matter;

3.    Displaying any of the Materials on any website owned or operated by any of the Defendants or any of its principals.

B.        Within **three (3) calendar days** of the date of this Order, each Defendant shall provide to Plaintiff's counsel and purge from their possession, custody or control the Materials, and all copies thereof (whether in paper or electronic form);

C.        Within **three (3) business days** of the date of this Order, Defendants shall remove the web pages currently available at https://americabeddingdirect.com/setting-up/ and https://americabeddingdirect.com/how-it-works/.

D.        Within **three (3) business days** of the date of this Order, Defendants shall immediately cease distribution of the books "Mattress Money" by Darren Conrad and "A Million Ways To Make A Million Dollars" by Darren Conrad and Clay Clark, and remove them from circulation.

E.        Within **five (5) business days** of the date of this Order, each Defendant shall provide an affidavit, notarized and signed under penalty of perjury, (1) confirming that they have complied with each and every paragraph of this Order, that they have not retained (or have access to) any of the Materials, and that, to their knowledge, no person other than RSS maintains a copy of the Materials; and (2) identifying all parties to whom they have disclosed the Materials.

F.        RSS shall post a bond in the amount of $10,000.00 by **12:00 p.m. on Thursday, April 2, 2026**.

G.        A preliminary injunction hearing will be held before the Honorable Algenon L. Marbley, United States District Court, 85 Marconi Boulevard, Columbus, Ohio, Court Room 1, Room 331, on **April 13, 2026**, **at 9:30 a.m.**, and will continue day-to-day until completed.

H.        This Temporary Restraining Order will remain in effect until adjournment of the Preliminary Injunction hearing, and presently scheduled for April 13, 2026, at 9:30 a.m.

**IT IS SO ORDERED.**

**ALGENON L. MARBLEY**
**UNITED STATES DISTRICT JUDGE**

**DATED:  April 1, 2026**